**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | |
|---|---|
| Ronald Bentley Oates,<br>Plaintiff,<br>vs.<br>Florence School District One,<br>Defendant. | C/A No.: 4:24-cv-00384-JD-KDW<br><br>ORDER AND OPINION |

This matter is before the Court on the Report and Recommendation ("Report") of United States Magistrate Judge Kaymani D. West, issued pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 (D.S.C.). (DE 53.) The Report recommends granting in part and denying in part Defendant Florence School District One's ("District") Motion for Summary Judgment. (DE 37.) Specifically, the Report recommends denying summary judgment on Plaintiff Ronald Bentley Oates's ("Oates") claim for disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and granting summary judgment on his ADA retaliation claim. (DE 53 at 25–26.)

Both parties filed objections. Oates objects to the recommended disposition of his retaliation claim (DE 55), and the District objects to the recommended denial of summary judgment on the discrimination claim (DE 56). Oates filed a reply to the District's objections. (DE 61.) For the reasons below, the Court adopts in part and declines to adopt in part the Report and denies the District's Motion for Summary Judgment.

### A. Background

Oates began working for the District in 2006 and became principal of Sneed Middle School for the 2018–2019 school year. He remained principal until the events giving rise to this action in 2022. (DE 53 at 2.) The record reflects both documented concerns regarding aspects of Oates's performance and evidence favorable to his performance, including positive evaluations and other evidence on which Oates relies to challenge the District's characterization of his work. (DE 53 at 2–6, 18–19.)

The events immediately preceding Oates's demotion are central to the parties' objections. On April 11, 2022, Oates and Superintendent Richard O'Malley met to discuss several reprimands. O'Malley described the meeting as a "good meeting" concerning Oates's return and moving forward. (O'Malley Dep. 76:17-22, DE 42-9 at 23.) Later that day, after seeing his physician, Oates emailed O'Malley that he "need[ed] to be off the remainder of the week for a stress related condition" and attached medical documentation. (DE 42-10 at 2; DE 42-11 at 2.)

The District's reappointment materials identified Oates for reappointment as principal of Sneed Middle School, and the Board considered employee renewals on April 14, 2022. (DE 42-13; DE 42-14 at 7.) The parties dispute the significance of that action and precisely when O'Malley decided that Oates should instead be reassigned to a teaching position. Nathaniel Marshall, the District's Chief Personnel Officer, testified that he understood the demotion decision to have occurred after the April 14 Board meeting but before contracts were issued. (Marshall Dep. 45–48, DE 42-6 14–17.) O'Malley testified that he made the decision "right somewhere prior" to an April

27 meeting with Oates and Marshall but acknowledged that no document establishes the precise date. (O'Malley Dep. 101:18-23, 110–11, DE 42-9 at 35, 41–42.)

On April 27, Oates told O'Malley and Marshall that he had been medically diagnosed with anxiety and depression and was receiving treatment. O'Malley testified that, upon learning of the diagnosis, he believed that as Oates's employer he should be "offering services or an accommodation" and discussed the District's mental health counseling program. Oates's account differs in material respects. He testified that O'Malley said he would require counseling, questioned whether Oates could handle the pressure of being a principal, and made other hostile remarks. (Oates Dep. 42:15–43:8, 139:23–140:4, DE 42-1 at 11–12, 23–24; O'Malley Dep. 99:2–101:12, DE 42-9 at 33–35.) The next morning, O'Malley instructed Marshall to advise Oates that he would be reassigned from principal to teacher. (Marshall Dep. 39:5–40:23, DE 42-6 at 10–11.)

Oates thereafter filed this action asserting ADA discrimination and retaliation. Following discovery, the District moved for summary judgment on both claims. (DE 37.)

**B. Report and Recommendation**

The Magistrate Judge filed the Report on April 22, 2026. The Report analyzed Oates's discrimination claim under the *McDonnell Douglas* burden-shifting framework. As to whether Oates is within the ADA's protected class, the Report noted that Oates expressly elected to proceed under the ADA's "regarded as" definition of disability. (DE 53 at 12.) Applying the post-ADAAA language of 42 U.S.C. § 12102(3),

the Report concluded that Oates was not required to show that the District perceived his impairment as substantially limiting a major life activity. The Report also concluded that the District had not established as a matter of law that the impairment it allegedly perceived was both "transitory and minor." (DE 53 at 12–16.)

The Report next found sufficient evidence to create a triable issue concerning whether Oates was meeting the District's legitimate expectations and whether his demotion occurred under circumstances raising an inference of discrimination. The Report considered the District's evidence of performance concerns and unfavorable portions of the Blue Ribbon assessment but also considered Oates's recent reappointment recommendation, his prior evaluations, the Blue Ribbon committee's favorable findings in other areas, and testimony that his direct supervisor had not recommended demotion. (DE 53 at 17–19.)

Finally, as to discrimination, the Report concluded that the District articulated legitimate, nondiscriminatory reasons for the reassignment, but Oates produced sufficient evidence that a reasonable jury could find those reasons pretextual. Among other things, the Report considered the timing of the decision, evidence concerning the District's explanations for the demotion, documents compiled after the demotion to support the decision, Oates's prior performance evaluations, and the relationship between the Blue Ribbon report and the earlier recommendation that Oates remain principal. (DE 53 at 19–25.) The Report, therefore, recommends denying summary judgment on the discrimination claim.

The Report reached a different conclusion on retaliation. It found that Oates could not establish protected activity because he proceeds solely under the ADA's regarded-as definition, and 42 U.S.C. § 12201(h) provides that an individual qualifying as disabled solely under that provision is not entitled to reasonable accommodation. Relying principally on § 12201(h) and *Yoo v. BMW Manufacturing Co.*, No. 7:17-cv-3499-TMC, 2020 WL 415897 (D.S.C. Jan. 27, 2020), the Report concluded that Oates, therefore, could not engage in protected activity by requesting or discussing a reasonable accommodation and recommended summary judgment on the retaliation claim. (DE 53 at 25–26.)

**C. Legal Standard**

The Magistrate Judge's recommendation carries no presumptive weight, and responsibility for the final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court must make a de novo determination of those portions of the Report to which a party makes a specific objection and may "accept, reject, or modify, in whole or in part," the findings or recommendations. 28 U.S.C. § 636(b)(1). For portions to which no specific objection is made, the Court need only satisfy itself that there is no clear error on the face of the record. *Diamond v. Colonial Life & Accident Insurance Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

Summary judgment is appropriate only when the movant demonstrates that "there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986). As the Fourth Circuit recently emphasized, "the aim of summary judgment is not to determine the exact strength of a case and dispose of so-called weak cases, but instead to determine whether a rational jury could find in the plaintiff's favor." *Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244, 254 (4th Cir. 2025) (quoting *Webster v. Chesterfield County School Board*, 38 F.4th 404, 412 (4th Cir. 2022)). The Court therefore may not weigh conflicting evidence or make credibility determinations. *Anderson*, 477 U.S. at 249, 255.

The parties analyze Oates's ADA claims under the *McDonnell Douglas* burden-shifting framework. Under that framework, a plaintiff must first establish a prima facie case. If he does so, the employer bears a burden of production to articulate a legitimate, nondiscriminatory or nonretaliatory reason for the challenged action; that burden "can involve no credibility assessment." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000) (citation omitted). The burden then returns to the plaintiff to produce evidence from which a reasonable factfinder could conclude that the stated reason is pretextual. *Id.* at 143; *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 575–79 (4th Cir. 2015).

## D. Discussion

### 1. The District's Objections to the ADA Discrimination Claim

The District presents three principal objections to the Report's discrimination analysis. (DE 56.) It contends that Oates cannot establish regarded-as disability (*id.* at 1), that he was not meeting the District's legitimate expectations or otherwise

cannot show circumstances giving rise to an inference of discrimination (*id.* at 11), and that the evidence cannot support a finding of pretext (*id.* at 15). The Court considers each objection de novo.

**a. "Regarded as" Disability**

The District first contends that Oates cannot establish regarded-as disability. It devotes substantial discussion to the absence of evidence that Oates's anxiety or depression substantially limited a major life activity and relies on decisions, including *Haulbrook v. Michelin North America, Inc.*, 252 F.3d 696 (4th Cir. 2001), addressing the pre-ADAAA definition of "regarded as" disability. (DE 56 at 2–10.)

The objection does not warrant summary judgment. Oates expressly limited his summary-judgment theory to the regarded-as prong, and the Report accordingly did not decide whether he is actually disabled under § 12102(1)(A). (DE 53 at 12; DE 42 at 19.) The Court likewise need not decide that unasserted theory.

For the regarded-as theory before the Court, the amended statutory text controls. Section 12102(3)(A) provides that an individual is regarded as having a disability when he is subjected to prohibited action "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). Thus, to the extent the District relies on *Haulbrook*'s pre-ADAAA regarded-as standard, under which an employer had to perceive an impairment as substantially limiting a major life activity, that standard no longer defines regarded-as disability under the amended ADA. *See Miller v. Maryland Department of Natural Resources*, 813 F. App'x 869, 876–77 (4th Cir.

2020) (applying the post-ADAAA definition). Accordingly, for purposes of the regarded-as element, the question is whether the evidence would permit a reasonable jury to find that the District subjected Oates to the challenged action because of an actual or perceived impairment.

Viewed in Oates's favor, the evidence permits that inference. O'Malley knew by April 11 that Oates requested medically supported leave for a "stress related condition." (DE 42-10 at 2; DE 42-11 at 2.) On April 27, Oates specifically disclosed diagnoses of anxiety and depression and ongoing treatment. (Oates Dep. 42:15–43:8, DE 42-1 at 11–12.) O'Malley acknowledged discussing District mental-health services because, as an employer, he believed he should be "offering services or an accommodation." (O'Malley Dep. 99:2–101:12, DE 42-9 at 33–35.) Oates also testified that O'Malley questioned whether he could handle the pressure of being a principal. (Oates Dep. 139:23–140:4, DE 42-1 at 23–24.) The next morning, O'Malley instructed Marshall to advise Oates that he would be reassigned from principal to teacher. (Marshall Dep. 39:5–40:23, DE 42-6 at 10–11.) These facts go beyond mere awareness of a diagnosis and permit a reasonable inference that O'Malley perceived Oates as having a mental impairment and that the perception may have entered the employment decision.

The District's transitory-and-minor argument does not alter the result. Section 12102(3)(B) excludes an impairment that is both "transitory and minor," with "transitory" defined as an actual or expected duration of six months or less. The implementing regulation treats that limitation as a defense and requires the covered

entity to "demonstrate that the impairment is both 'transitory' and 'minor,'" measured objectively. 29 C.F.R. § 1630.15(f); *see Miller*, 813 F. App'x at 876–77. The District characterizes what O'Malley perceived as temporary stress associated with the Blue Ribbon process and workplace reprimands. (DE 56 at 9–10.) Oates, however, points to evidence that the condition disclosed to O'Malley on April 27 was medically diagnosed anxiety and depression, with medical evidence indicating that his diagnoses and treatment extended well beyond six months. (DE 61 at 7–8; DE 42-30.)

At minimum, the record does not permit the District to establish as a matter of law that the impairment O'Malley allegedly perceived was both transitory and minor. The Court, therefore, overrules this objection. In doing so, the Court need not determine affirmatively that Oates has established regarded-as status as a matter of law; it is enough that the District has not demonstrated entitlement to summary judgment on that issue.

**b. Legitimate Expectations and Inference of Discrimination**

The District next objects that the evidence conclusively establishes Oates was not meeting its legitimate expectations and that the timing of the demotion does not support an inference of discrimination. It relies on documented performance issues, parent complaints, policy infractions, and unfavorable portions of the Blue Ribbon assessment. It also contends that the timing is explained by the statutory deadline for issuing employment contracts and disputes Oates's characterization of the April 14 Board action. (DE 56 at 11–14.)

Those are substantial defense arguments, but they do not eliminate the factual disputes identified by the Report. Oates does not rely solely on his own assessment of his performance. He points to the District's own reappointment materials identifying him for reappointment as principal shortly before his demotion, prior performance evaluations rating him proficient or exemplary, favorable aspects of the Blue Ribbon assessment, and testimony that Hall—his direct supervisor—did not recommend demotion. (DE 53 at 18–19; DE 61 at 9–11.)

That competing evidence matters under the Fourth Circuit's recent cases. To satisfy the legitimate-expectations element, an employee need not "show that [he] was a perfect or model employee," only that he was qualified and meeting the employer's legitimate expectations. *Wannamaker-Amos*, 126 F.4th at 256 (quoting *Cowgill v. First Data Technologies, Inc.*, 41 F.4th 370, 380 (4th Cir. 2022)). In *Wannamaker-Amos*, the court found a triable dispute where the employer relied on alleged performance deficiencies while the employee produced contrary evidence that other supervisors regarded her performance highly. *Id.* at 256–57. The same principle applies here: the reappointment recommendation, prior evaluations, favorable portions of the Blue Ribbon assessment, and testimony from Oates's direct supervisor provide evidence from which a jury could reject the District's characterization of Oates's performance.

The Court does not hold that the April 14 reappointment materials guaranteed Oates continued employment as principal, nor does it resolve the parties' disagreement over the Board's precise action or the contract-issuance process. The

District may persuade a jury that the reappointment paperwork was preliminary, that the Blue Ribbon findings confirmed existing performance concerns, and that O'Malley made an ordinary personnel decision before the contract deadline. But Rule 56 does not permit the Court to select that inference where the record also reasonably supports the contrary one. The objection is, therefore, overruled.

**c. Pretext**

The District's final discrimination objection challenges the Report's pretext analysis. It maintains that its reasons for reassigning Oates have remained consistent: longstanding performance concerns, policy violations, student-discipline concerns, school culture, and the Blue Ribbon findings. The District also emphasizes Oates's own earlier statements attributing his workplace difficulties to his disagreements with administrators over hiring and other management issues rather than disability. (DE 56 at 15–17.)

Again, the District has produced evidence from which a factfinder could accept its explanation. Indeed, the Report expressly found that the District satisfied its burden of producing legitimate, nondiscriminatory reasons for the demotion. (DE 53 at 20.) The issue at the final *McDonnell Douglas* stage is whether the record, viewed favorably to Oates, also permits a reasonable factfinder to disbelieve those reasons and infer unlawful discrimination.

It does. The Report identified evidence from which a jury could regard the District's explanation as having expanded after the decision. After the demotion, the District compiled a packet of twenty-four documents; Marshall testified that he

understood the packet to have been compiled during the grievance process as evidence supporting O'Malley's decision to demote Oates. (Marshall Dep. 49:13–50:20, DE 42-6 at 18–19.) O'Malley, in turn, did not recall many of the documents and, as to those he recognized, testified that he recalled their substance rather than specifically reviewing the documents when deciding to demote Oates. (O'Malley Dep. 105:3–108:8, DE 42-9 at 37–40.) The District's later EEOC submission referenced additional performance matters, including attendance issues, while O'Malley's later deposition testimony identified additional considerations, including academic performance, staff morale, student discipline, parent communication, and Oates's understanding of the principal's role, as reasons for the demotion. (DE 42-22 at 2–3; O'Malley Dep. 28:21–31:19, DE 42-9 at 8–11.) And O'Malley described the Blue Ribbon assessment as the "final straw" in his decision, while the record reflects the close temporal sequence among the Blue Ribbon process, Oates's reappointment as principal, his medical disclosures, and his demotion. (O'Malley Dep. 112:14–113:9, DE 42-9 at 43–44; Marshall Dep. 45:21–48:23, DE 42-6 at 14–17; Oates Dep. 42:15–43:8, DE 42-1 at 11–12; Marshall Dep. 39:5–40:23, DE 42-6 at 10–11.)

Fourth Circuit precedent squarely recognizes that materially evolving explanations can support an inference of pretext. In *Wannamaker-Amos*, the court reiterated that "[e]vidence of substantial changes to [an employer's] proffered reason for the termination permits an inference of pretext," and that offering "different justifications at different times" is independently probative. 126 F.4th at 258–59 (quoting *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 226 (4th Cir. 2019), and

*EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 852 (4th Cir. 2001)). *Jacobs* likewise recognizes that a plaintiff may show pretext by demonstrating that asserted justifications are "post hoc rationalizations invented for purposes of litigation." 780 F.3d at 576 (citation omitted). Particularly relevant here, *Wannamaker-Amos* notes that "[a] jury can also infer pretext from a decisionmaker's effort to build a file of issues never discussed with the plaintiff." 126 F.4th at 258 n.7.

Oates's earlier statements that he believed administrators were retaliating against him for questioning hiring or other practices are evidence the District may use to challenge his present theory. But those statements do not require the Court to accept Oates's own earlier speculation as a definitive account of the decisionmaker's motive. The Fourth Circuit recently rejected such a requirement, explaining that "a plaintiff need not speculate as to the alleged discriminator's motive to survive summary judgment." *Wannamaker-Amos*, 126 F.4th at 262. And although the ADA requires but-for causation, the Fourth Circuit has clarified that disability need only be "a but-for" cause, not the "only or sole cause," of the challenged action. *Gentry v. E.W. Partners Club Management Co.*, 816 F.3d 228, 235–36 & n.5 (4th Cir. 2016). The present record, therefore, permits competing reasonable inferences as to what actually motivated the reassignment.

The Court, therefore, agrees with the Report that the District's explanation cannot be resolved on summary judgment. "Where genuine issues of material fact are in dispute, it is not [the court's] role at the summary judgment stage to decide which party's evidence is more persuasive. That is the role of the jury." *Wannamaker-Amos*,

126 F.4th at 263. The District's objections to the recommended denial of summary judgment on the ADA discrimination claim are overruled.

**2. Oates's Objection to the ADA Retaliation Claim**

Oates raises one specific objection to the retaliation analysis: he contends the Report erroneously equated the absence of a substantive entitlement to accommodation under § 12201(h) with the absence of protection from retaliation for requesting accommodation. (DE 55 at 3–6.) The District defends the Report and additionally argues that neither Oates's medical-leave request nor his disclosure of anxiety and depression constituted protected activity, that the April 27 discussion was an employer-initiated offer of support rather than an accommodation request, and that Oates cannot establish causation or pretext. (DE 56 at 17–24.) Given these objections, the Court considers them de novo.

**a. Protected Activity**

Oates is correct that § 12201(h), standing alone, does not support the categorical rule applied by the Report. Section 12201(h) provides that a covered employer "need not provide a reasonable accommodation" to an individual who satisfies the ADA's definition of disability solely through the regarded-as prong. 42 U.S.C. § 12201(h). Thus, because Oates proceeds on his discrimination claim solely under § 12102(1)(C), he cannot premise a failure-to-accommodate claim on the District's refusal to provide an accommodation. But Oates asserts no failure-to-accommodate claim here. The question raised by his objection is narrower: whether the absence of a substantive accommodation entitlement, by itself, means that his

asserted accommodation request cannot constitute protected activity for an ADA retaliation claim.

Neither the statutory text nor the controlling appellate authorities cited by the parties support collapsing those two inquiries. In *Rhoads v. F.D.I.C.*, the Fourth Circuit affirmed summary judgment against a plaintiff on substantive ADA claims because she had not established disability yet separately explained that ADA retaliation "does not require that the claimant be disabled." 257 F.3d 373, 391 (4th Cir. 2001). And the Fourth Circuit has repeatedly treated a qualifying accommodation request as protected activity. *See Jacobs*, 780 F.3d at 577–79; *Kelly v. Town of Abingdon*, 90 F.4th 158, 166 (4th Cir. 2024) ("[A]n accommodation request constitutes protected activity that may sustain a retaliation claim." (citing *Haulbrook*, 252 F.3d at 706)). Those cases do not establish that every request by an employee proceeding under the regarded-as prong is protected. They do, however, show that the absence of a substantive accommodation entitlement does not, by itself, resolve whether an employee engaged in protected activity for purposes of a retaliation claim.

*Yoo* does not establish otherwise. Its regarded-as discussion addressed substantive entitlement to accommodation. The ADA-retaliation recommendation in *Yoo* was among the portions adopted without de novo analysis because the plaintiff had not made a specific objection to that recommendation. *See Yoo v. BMW Manufacturing Co.*, No. 7:17-cv-3499-TMC, 2020 WL 415897, at *2–3 (D.S.C. Jan. 27, 2020). It, therefore, does not supply the categorical rule applied by the Report here.

The Court, therefore, sustains Oates's objection to that legal premise and turns to the question the premise bypassed, whether the conduct Oates identifies can qualify as protected activity on this record.

Not every discussion of a medical condition or possible workplace assistance is protected activity. The District correctly relies on *Kelly* for the requirement of an adequate accommodation request. (DE 56 at 20–22.) No "magic words" are necessary, but "there must be a logical bridge connecting the employee's disability to the workplace changes he requests," and "the substance of the request must permit the employer to infer that the request relates to the employee's disability." 90 F.4th at 168. Thus, the substance and surrounding circumstances, not the label placed on the communication, control. *Id.*

The District argues that Oates cannot satisfy that standard. It emphasizes that mere disclosure of anxiety and depression is not protected activity, that O'Malley initiated the April 27 counseling discussion, and that a request for medical leave is not automatically an ADA accommodation request. (DE 56 at 17–22.) The Court agrees with those narrower propositions. A medical diagnosis, standing alone, is not an accommodation request; nor does an employer's unilateral offer of services necessarily transform a conversation into one.

But the record also contains the April 11 request Oates expressly pleaded and the District addressed in its objections. Count Two alleges that Oates engaged in protected activity by requesting "a reasonable accommodation in the form of medical leave." (DE 1-1 ¶ 58.) On April 11, Oates told O'Malley in writing: "I will need to be

off the remainder of the week for a stress related condition," and he attached medical documentation from his physician. (DE 42-10 at 2; DE 42-11 at 2.)

That communication is materially different from an unexplained request for vacation or time away from work. It identifies the workplace adjustment sought—leave—expressly ties that adjustment to a "stress related condition," and supplies contemporaneous medical documentation. Under *Kelly*, the District has not shown as a matter of law that the communication lacks the required "logical bridge." 90 F.4th at 168. Oates's attribution of his stress to work demands and reprimands may affect the jury's assessment of the evidence, but it does not sever the express connection between the requested leave and the stated medical condition.

Accordingly, the Court need not decide whether the April 27 employer-initiated counseling discussion, standing alone, would constitute protected activity. The pleaded April 11 leave request, an issue the District expressly addresses in its objections, is sufficient to preclude summary judgment on the ground that Oates engaged in no protected activity.

**b. Causation and Pretext**

The District alternatively argues that, even assuming protected activity, Oates cannot establish that it was a but-for cause of his reassignment. It relies on the same performance concerns discussed above, emphasizes the approaching May 1 contract deadline, and argues that an abrupt or arguably unfair personnel decision does not itself establish retaliation. (DE 56 at 22–24.) The District is correct that Oates

ultimately bears the burden of proving but-for causation. *See Lashley v. Spartanburg Methodist College*, 66 F.4th 168, 176 (4th Cir. 2023).

Oates responds that the timing and pretext evidence permit an inference of retaliation. (DE 55 at 3; DE 61 at 11–13.) He emphasizes that his April 11 medically supported leave request preceded his April 28 demotion by approximately seventeen days, that O'Malley received more specific information concerning his anxiety and depression on April 27, and that the demotion was communicated the next morning. The Court considers that evidence under the retaliation theory actually presented: whether protected activity caused the adverse action, not whether disability itself did so. *See Kelly*, 90 F.4th at 170–71 (explaining that discrimination and retaliation "rely on different theories of motive").

At the prima facie stage, the temporal relationship is sufficient to create a factual dispute concerning causation. In *Jacobs*, the Fourth Circuit held that a three-week interval between an accommodation request and termination was "sufficient to establish a disputed issue of fact as to the causation element of the prima facie case." 780 F.3d at 579. More generally, the Fourth Circuit has "made abundantly clear that temporal proximity suffices to show a causal relationship[]" when the employer acts soon after learning of protected activity. *Sempowich v. Tactile Systems Technology, Inc.*, 19 F.4th 643, 654 (4th Cir. 2021). Here, the interval is shorter than in *Jacobs*.

The Court recognizes that one fact cuts in the District's favor: the District's reappointment materials continued to identify Oates as principal after his April 11 leave request. (DE 42-13; DE 42-14 at 7.) That fact may substantially assist the

District at trial. It does not, however, eliminate the remaining evidence or resolve the disputed chronology as a matter of law. Marshall testified that he understood the demotion decision to have occurred after the April 14 Board meeting. (Marshall Dep. 45:21–48:23, DE 42-6 at 14–17.) O'Malley testified only that he made the decision "right somewhere prior" to the April 27 meeting and could identify no contemporaneous document fixing the date. (O'Malley Dep. 101:17–23, 110:16–111:4, DE 42-9 at 35, 41–42.) In the intervening period, O'Malley directed an April 25 reprimand alleging that Oates had failed to return to work after his April 11 medical appointment. (Marshall Dep. 33:4–34:24, DE 42-6 at 7–8.) That reprimand was rescinded after Oates challenged it and video footage confirmed that he had returned to school. (O'Malley Dep. 95:5–25, DE 42-9 at 30.) On April 27, O'Malley learned that Oates had been diagnosed with anxiety and depression and was receiving treatment. (Oates Dep. 42:15–43:8, DE 42-1 at 11–12; O'Malley Dep. 99:2–101:12, DE 42-9 at 33–35.) The next morning, O'Malley instructed Marshall to inform Oates that he would be reassigned from principal to teacher. (Marshall Dep. 39:25–40:23, DE 42-6 at 10–11.)

The District has articulated legitimate reasons for its decision, so temporal proximity alone does not end the inquiry. But the timing is not the only evidence Oates relies on. The disputed chronology of the decision, the rescinded April 25 reprimand, and the evidence discussed above from which a jury could question the District's evolving performance explanation provide additional context from which a reasonable jury could infer retaliatory motive. *Cf. Lashley*, 66 F.4th at 176–77

(finding pretext lacking where the relevant decisionmakers were not shown to know of the protected activity and the employer's explanations remained consistent). *Jacobs* is also instructive: after finding temporal proximity sufficient at the prima facie stage, the Fourth Circuit proceeded through the burden-shifting framework and held that the plaintiff's pretext evidence was sufficient to allow the retaliation claim to reach a jury. 780 F.3d at 579.

The Court does not find that retaliation occurred, nor does it hold that temporal proximity alone establishes pretext or ultimate causation. Rather, viewing the record as Rule 56 requires, a reasonable jury could find that Oates's protected activity was a but-for cause of his reassignment; a reasonable jury could also accept the District's contrary explanation. The Court cannot choose between those competing inferences on summary judgment.

Oates's objection is, therefore, sustained, and the Court declines to adopt the Report's recommendation that summary judgment be granted on the ADA retaliation claim.

**E. Conclusion**

For the foregoing reasons, the Court:

1. **SUSTAINS** Plaintiff Ronald Bentley Oates's Objection (DE 55);

2. **OVERRULES** Defendant Florence School District One's Objections (DE 56);

3. **ADOPTS IN PART and DECLINES TO ADOPT IN PART** the Report and Recommendation (DE 53), adopting the recommendation that summary

judgment be denied on Plaintiff's ADA discrimination claim but declining to adopt the recommendation that summary judgment be granted on Plaintiff's ADA retaliation claim;

4. **DENIES** Defendant's Motion for Summary Judgment (DE 37) in its entirety.

Plaintiff's ADA discrimination and retaliation claims, therefore, remain for trial. Because this Order does not dispose of the action, no final judgment shall be entered at this time.

**IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

Florence, South Carolina
August 18, 2026